UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JASON DEAN HUBBELL, | ) |
| Petitioner, | ) |
| v. | ) No. 1:20-cv-02217-JPH-KMB |
| DENNIS REAGLE,[1] | ) |
| Respondent. | ) |

**ORDER GRANTING MOTIONS FOR LEAVE TO CONDUCT DISCOVERY**

In this federal habeas case, Jason Hubbell challenges his state-court murder conviction. He claims that he is innocent and that he was wrongly convicted because the State of Indiana withheld material, exculpatory information during state-court proceedings. Currently before the Court are Mr. Hubbell's motions to conduct discovery. For the reasons that follow, the motions to conduct discovery are granted.

## I.  Background

Mr. Hubbell's amended petition for writ of habeas corpus challenges his Indiana state court conviction for the murder of Sharon Myers. Dkt. 48. The state courts upheld Mr. Hubbell's conviction and sentence on appeal. *Hubbell v. State*, 754 N.E.2d 884 (Ind. 2001).

---

[1] Because Dennis Reagle is the current Warden of Pendleton Correctional Facility, the **clerk is directed** to update the docket to reflect that Warden Reagle is the respondent. *See* Rules 2(a) and 12 of the Rules Governing Section 2254 Cases in the United States District Courts; Fed. R. Civ. P. 25(d).

Mr. Hubbell then filed a petition for post-conviction relief in state court, which was denied after an evidentiary hearing. After that ruling was reversed on appeal, the post-conviction trial court held another evidentiary hearing and denied Mr. Hubbell's second amended post-conviction petition in all respects. The trial court's denial of Mr. Hubbell's petition for post-conviction relief was affirmed on appeal and the Indiana Supreme Court denied Mr. Hubbell's petition for transfer. *See* dkt. 48 at 3–7 (summarizing state-court procedural history).

In this federal habeas case, Mr. Hubbell's principal claim is that the State suppressed evidence that was material and exculpatory because it implicated Michael Overstreet in Ms. Myers' murder. Dkt. 48. Mr. Overstreet was convicted in Indiana state court of abducting and killing Kelly Eckart. *Overstreet v. State*, 783 N.E.2d 1140 (Ind. 2003). Both women were abducted from their workplaces in 1997 and later found strangled with their own clothing in or near the Atterbury Fish and Wildlife Area in Johnson County, Indiana. Mr. Hubbell also claims that his trial counsel failed to sufficiently investigate Mr. Overstreet's possible involvement with Ms. Myers' death. Dkt. 48.

A.  ***Brady* claim presented in Mr. Hubbell's federal habeas case**

Mr. Hubbell's federal habeas counsel recently obtained evidence that Mr. Hubbell and his counsel did not have during any phase of the state-court proceedings. This includes statements made to the police in 1997 by Melissa Holland, Mr. Overstreet's then-wife, expressing her belief that Mr. Overstreet had been involved with the murder of Ms. Myers. In a recent interview with federal habeas counsel's investigator, Ms. Holland stated that back in 1997, she told the

2

police that Mr. Overstreet was gone on the day that Ms. Myers was abducted and murdered; that he had driven a cargo van on that day; and that he had blood on his clothes when he came home.

Notes taken by the Franklin, Indiana, Chief of Police, Harry Furrer, which were recently obtained by federal habeas counsel, state the following about Chief Furrer's interview of Ms. Holland:

> Meyers thing came up, flipped channels, Dean[2] said 'Tiel (sic) Marsh' I knew that was the place. He fished their (sic) a lot. News coverage, Dean commented on the shoes of both and said to Melissa, "now do you think it was the boyfriend."

Dkt. 49 at 4; dkt. 49-2 at 2.

In a separate narrative report, Chief Furrer wrote the following about his November 6, 1997, interview of Ms. Holland:

> Melissa said during the [Eckart] murder investigation her husband watched all the news surfing back and forth between the news stations to watch coverage of the investigation. She said that he read all the newspaper articles that were written about the case. Melissa said he never commented on the case except one time. She said that she commented several times to him that she thought the boyfriend killed Kelly Eckhart. He wouldn't respond. She said after bones had been found belonging to Sharon Myers, he said to her that the shoes and socks were missing from both of the women and do you still think it's the boyfriend.

Dkt. 49 at 4; dkt. 49-3 at 8.

Federal habeas counsel also learned of two other witnesses who made statements to the police back in 1997 that implicated Mr. Overstreet in the murder of Ms. Myers.

---

[2] Dean is also Michael Overstreet's middle name. *See Overstreet*, 783 N.E.2d at 1146.

3

The first witness provided a statement to Detective Ketchum. He recounted that he witnessed Mr. Overstreet fighting with his wife at Wal-Mart. As Mr. Overstreet was leaving the store he stopped at the billboard on the wall with posts of missing children. With a sick grin he pointed his finger and tapped the glass over Ms. Myers' photo. Dkt. 49-4 at 1-6.

The second witness shared a cell with Mr. Overstreet at the Johnson County Jail. The witness gave a statement to Detectives sharing conversations he had with Mr. Overstreet regarding the murder of Ms. Eckart and noted that during these conversations Mr. Overstreet repeatedly referred to Ms. Myers and noted that the murders were similar. Dkt. 49-5 at 6.

It is undisputed that Mr. Hubbell's *Brady* claim was not presented to the Indiana Supreme Court in post-conviction proceedings.

The State does not dispute that during state-court proceedings, Mr. Hubbell and his counsel did not have any of the information recently identified by his federal habeas counsel, or that the State told Mr. Hubbell and his counsel there was no connection between the investigation of Mr. Overstreet for Ms. Eckart's murder and the investigation of Mr. Hubbell for Ms. Myers' murder.

**B.     Mr. Hubbell's relevant discovery requests before trial**

Before trial, Mr. Hubbell's counsel made broad discovery requests for production of all files related to the State's investigation of the death of Sharon Myers, including

- all witness statements and *Brady* material.

4

> "Any and all information, in whatever form, the State of Indiana has in its possession or control regarding its investigation into the death of Sharon Myers. This includes, but is not limited to, the entire investigation file, all witness statements and interview transcripts, . . . .
>
> Any and all information, in whatever form, the Columbus Police Department has in its possession or control regarding its investigation into the death of Sharon Myers. This includes, but is not limited to, the entire investigation file, all witness statements and interview transcripts, . . . ."

Dkt. 10-9 at 121 ¶¶ 3–4 (Hubbell's Motion to Produce filed in Bartholomew County Circuit Court on September 3, 1998).

- "Statements of any and all witnesses taken by police which tend to exculpate Jason Hubbell."

- "Any and all notes and reports in the custody, care and control of the Columbus Police Department, Bartholomew County Sheriff's Department, Federal Bureau of Investigation and/or Indiana State Police dealing with interviews and/or questioning of possible suspects in the murder of Sharon Myers."

Dkt. 10-9 at 255-57 ¶¶ 6-9 (Hubbell's Motion to Produce filed in Bartholomew County Circuit Court on September 30, 1998).

Mr. Hubbell's trial counsel did not receive any materials from the State relating to Mr. Overstreet. Dkt. 10-5 at 60.

Shortly before the trial, Mr. Hubbell's counsel moved to continue the trial so they could further investigate Mr. Overstreet as a suspect in the murder of Ms. Myers. Dkt. 48 at 11. After the prosecutor represented that the Myers and Eckert cases were totally unrelated, Mr. Hubbell's counsel withdrew the motion to continue. *Id.*

5

### C. Mr. Hubbell's relevant discovery requests made during post-conviction relief proceedings

During post-conviction proceedings, Mr. Hubbell's discovery requests included a request to Johnson County Law Enforcement for the "[n]ame, rank and title of the lead detective currently assigned and or over the Michael Dean Overstreet case." Dkt. 51-2 at 7 ¶ 9.a (Hubbell's Verified Motion for Discovery filed in Bartholomew County Circuit Court on December 8, 2018). In support of the request, Mr. Hubbell argued that facts relating to Mr. Overstreet and the murder of Ms. Eckart would have mattered to the jury in Mr. Hubbell's trial. Dkt. 51-2 at 5 ¶ 8. Mr. Hubbell gave a detailed explanation of "the relevance of the Michael Dean Overstreet case in relation to the case of Jason Dean Hubbell", including as it related to the trial testimony of several prosecution witnesses. *Id.* at 5-7 ¶ 8. Specifically, Mr. Hubbell explained his need for the requested discovery in relation to the testimony of witnesses at his trial who testified about the identity of both the person and the vehicle involved with the abduction of Ms. Myers. *Id.*

The State post-conviction relief (PCR) court denied Mr. Hubbell's requests for discovery. *See* dkt. 51-2 (discovery requests in state post-conviction proceedings); dkt. 9-7 at 15 (docket of state court post-conviction relief case showing denials of Mr. Hubbell's motions for discovery).

### D. Mr. Hubbell's discovery requests in this case

In this case, Mr. Hubbell seeks to conduct discovery relating to Mr. Overstreet's possible involvement with the murder of Ms. Myers by issuing subpoenas to five Indiana agencies and taking the deposition of Ms. Holland.

6

Dkt. 49 (first motion for leave to conduct discovery); dkt. 70 (motion for leave to conduct deposition). These discovery requests relate to Mr. Hubbell's *Brady* claim and are based on information that was recently discovered by his federal habeas counsel and that was not known to Mr. Hubbell or his counsel during any phase of the state-court proceedings. *Id.*

This Court previously found that Mr. Hubbell has shown good cause to conduct the requested discovery. Dkt. 54 (citing Rule 6(a) of the Rules Governing Section 2254 Cases in the United States District Courts and *Bracy v. Bramley*, 520 U.S. 899, 904 (1997)). In conjunction with finding the existence of good cause to conduct discovery, however, the Court also ordered the parties to provide supplemental briefing on whether the Supreme Court's recent opinion in *Shoop v. Twyford*, 142 S. Ct. 2037, 2045 (2022), requires a petitioner to meet the requirements of 28 U.S.C. § 2254(e)(2) before a district court can authorize discovery. Dkt. 54 at 2. This matter is now fully briefed.

## II. Applicable Law

A federal court may grant habeas relief from a state-court judgment only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws ... of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") directs how the Court must consider petitions for habeas relief under § 2254. "In considering habeas corpus petitions challenging state court convictions, [the Court's] review is governed (and greatly limited) by AEDPA." *Dassey v. Dittmann*, 877 F.3d 297, 301 (7th Cir. 2017) (en banc) (citation and quotation marks omitted). "The

standards in 28 U.S.C. § 2254(d) were designed to prevent federal habeas retrials and to ensure that state-court convictions are given effect to the extent possible under law." *Id.* (citation and quotation marks omitted).

AEDPA generally limits a federal habeas court's review of the evidence and corresponding record to that which was developed in the state court. *Shoop*, 142 S. Ct. at 2043-44. Because in most cases a federal habeas court does not have the ability to develop and consider new evidence, a habeas petitioner does not have an automatic right to conduct discovery. *See id.; Bracy v. Bramley*, 520 U.S. 899, 904 (1997). Instead, Rule 6(a) of the Rules Governing § 2254 Cases allows a habeas corpus petitioner to conduct civil discovery "if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise." To be entitled to conduct discovery, a petitioner must make specific factual allegations that demonstrate that there is good reason to believe that the petitioner may, through discovery, be able to garner sufficient evidence to entitle him to relief. *See Bracy* at 908-09.

"A federal court may never needlessly prolong a habeas case, particularly given the essential need to promote the finality of state convictions, so *a court must, before facilitating the development of new evidence, determine that it could be legally considered in the prisoner's case.*" *Shoop*, 142 S. Ct. at 2045 (cleaned up) (emphasis added). In *Shoop,* the Court held that a district court erroneously authorized a petitioner to be transported for psychological testing without first requiring the petitioner to meet the requirements of 28 U.S.C. § 2254(e)(2).

Section § 2254(e)(2) states:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> (A) the claim relies on--
>
> > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> >
> > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

While the text of Section 2254(e)(2) refers only to the circumstances under which a district court may hold an evidentiary hearing, *Shoop* appears to generally apply to all phases of federal habeas cases. And by requiring petitioners to meet the requirements of § 2254(e)(2) before discovery may be authorized, *Shoop* raises the bar for conducting discovery in federal habeas cases higher than the requirements imposed by Rule 6(a) and Supreme Court precedent. *See Bracy*, 520 U.S. at 908-09 (To be entitled to discovery, a petitioner must make specific factual allegations demonstrating that there is good reason to believe that the petitioner may, through discovery, be able to garner sufficient evidence to entitle him to relief.)

### III. Discussion

Mr. Hubbell argues that the Court "need not determine whether § 2254(e)(2) applies or is satisfied at this preliminary juncture." Dkt. 61 at 2.

9

According to Mr. Hubbell, "*Shoop* does not alter the longstanding rule that a federal petitioner is entitled to discovery under Rule 6(a) where he makes 'specific allegations' that provide reason to believe that he 'may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.' *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997)."³ Mr. Hubbell points out that *Shoop* did not expressly overrule *Bracy*. Dkt. 65 at 5. To the contrary, *Shoop* favorably cited *Bracy*, and its predecessor *Harris v. Nelson*, 394 U.S. 286, 300 (1969). *Shoop*, 142 S. Ct. at 204-45. Mr. Hubbell further argues that even if he must clear the § 2254(e)(2) bar because of *Shoop,* he is nonetheless entitled to conduct discovery because he did not fail to develop the factual basis of his *Brady* claim in State court. Dkt. 61 at 13-19.

Respondent argues that under *Shoop,* Mr. Hubbell "cannot conduct discovery unless he can meet the requirements of 18 U.S.C. § 2254(e)(2)." Dkt. 63 at 1. And here, Mr. Hubbell cannot do so because he failed to develop the factual basis for his claims during state-court proceedings. *Id.* at 3. Respondent further argues that Mr. Hubbell cannot show that evidence developed through the discovery he seeks would be admissible for the Court to consider in evaluation of his federal habeas petition. Because the Court cannot facilitate the development of new evidence, Mr. Hubbell's motions to conduct discovery must be denied. *Id.; Shoop*, 142 S. Ct. 2045.

*Shoop*'s broad language indicates that its holding likely applies to Mr. Hubbell's motions to conduct discovery. *Shoop*, 142 S. Ct. at 2045 ("[O]ur

---

³ The Court has already found good cause to conduct discovery under Rule 6. Dkt. 54.

precedents explain that a district court must consider [AEDPA]'s requirements before facilitating the development of new evidence. . . . In every habeas case, 'the court must be guided by the general principles underlying our habeas corpus jurisprudence.'"). But the Court does not need to definitively resolve that question if Mr. Hubbell is entitled to discovery even under § 2254(e)(2). The Court therefore considers whether Mr. Hubbell has satisfied § 2254(e)(2).

### A. Mr. Hubbell did not fail to develop the record in State court on the facts relating to Mr. Overstreet's possible involvement with Sharon Myers' murder

The strict limitations of § 2254(e)(2)(A) and (B) apply only when the petitioner has "failed to develop" the record in state court. 28 U.S.C. § 2254(e)(2). Failure to develop the record in this context "mean[s] that the prisoner must be 'at fault' for the undeveloped record in state court." *Shinn v. Ramirez*, 142 S. Ct. 1718, 1734 (2022) (quoting *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 9 (1992)). "A prisoner is 'at fault' if he 'bears responsibility for the failure' to develop the record." *Id.* (quoting *Keeney*, 504 U.S. at 9). "If there has been no lack of diligence at the relevant stages in the state proceedings, the prisoner has not 'failed to develop' the facts under 2254(e)(2)'s opening clause." *Williams v. Taylor*, 529 U.S. 430, 437 (2000).

Mr. Hubbell argues that because the prosecution withheld material, exculpatory information, he cannot be faulted for having failed to develop the state-court record on his *Brady* claim. Dkt. 65 at 8 (citing *Williams*, 529 U.S. at 434). Before further discussion of the state PCR proceedings, however, the Court reviews the steps that were taken by Mr. Hubbell's counsel to develop the record

11

on the *Brady* claim before Mr. Hubbell's trial began. While Respondent argues that the Court should look only at efforts made by Mr. Hubbell to develop the record during PCR proceedings, dkt. 63 at 7-8, the steps that were taken by his trial counsel to obtain discovery from the State are relevant to evaluation of the reasonableness of Mr. Hubbell's efforts to develop the record during PCR proceedings. *See Williams*, 529 U.S. at 435 ("The question is not whether the facts could have been discovered but instead whether the prisoner was diligent in his efforts. . . . Diligence for purposes of the opening clause depends on whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court; . . . ").

The obligation to disclose *Brady* material exists independent of discovery requests made by defense counsel. *Strickler v. Greene*, 527 U.S. 263, 280 (1999) ("[T]he duty to disclose [*Brady*] evidence is applicable even though there has been no request by the accused . . ."). Here, Mr. Hubbell's trial counsel made broad discovery requests for exculpatory evidence and received nothing related to Mr. Overstreet in response. Moreover, the prosecutor affirmatively represented to the trial court that there was no relationship between the investigation of the murder of Ms. Eckart and the investigation of murder of Ms. Myers. *See* Dkt. 10-2 at 97. Similarly, the lead detective in the Myers investigation testified in a pretrial deposition that there was no connection between the Myers and Eckart cases. *Hubbell v. State*, 2020 WL 2109247, *4 (May 20, 2020) (in the record at dkt. 9-17). Yet habeas counsel in this case has identified witness interviews by law enforcement that took place in 1997 and implicated Mr. Overstreet as a suspect

12

in Ms. Myers' murder. Those interviews were never disclosed to Mr. Hubbell or his counsel during any phase of the State court proceedings, but only discovered by his habeas counsel in this case.

Under these circumstances, it was reasonable for Mr. Hubbell and his counsel to believe that the State did not have any information relating to the investigation of Mr. Overstreet as a suspect or otherwise implicating him in Ms. Myers' murder. *In re Will*, 970 F.3d 536, 543 (5th Cir. 2020) ("Trial counsel may rely, absent notice to the contrary, on representations by the prosecutor" that all *Brady* evidence has been disclosed.).

Returning to Mr. Hubbell's efforts to develop the record with respect to his *Brady* claim during state PCR proceedings, Mr. Hubbell knew that his trial counsel had made broad discovery requests to the State for information regarding its investigation of Ms. Myers' murder. Dkt. 10-9 at 121 ¶¶ 3–4 (Hubbell's Motion to Produce filed in Bartholomew County Circuit Court on September 3, 1998); dkt. 10-9 at 255-57 ¶¶ 6-9 (Hubbell's Motion to Produce filed in Bartholomew County Circuit Court on September 30, 1998). Mr. Hubbell also knew that the State did not produce any information relating to Mr. Overstreet and had represented that there was no connection between the investigation of Ms. Eckart's murder and the investigation of Ms. Myers' murder.

Still, during PCR proceedings Mr. Hubbell attempted to obtain evidence from the State pertaining to Mr. Overstreet. Dkt. 51-2. His discovery requests included a request for the "[n]ame, rank and title of the lead detective currently assigned and or over the Michael Dean Overstreet case." Dkt. 51-2 at 7 ¶ 9.a

13

(Hubbell's Verified Motion for Discovery filed in Bartholomew County Circuit Court on December 8, 2018). And in support of the requested discovery, Mr. Hubbell explained how and why facts relating to Mr. Overstreet would have mattered to the jury as they considered the testimony of the prosecution's witnesses in the Myers case. Dkt. 51-2 at 5 ¶ 8.

At an evidentiary hearing during PCR proceedings, Mr. Hubbell asked his trial counsel questions about the Overstreet investigation. The State objected on the basis that the Myers and Eckart cases were unrelated. 2019 PCR Hearing Transcript, dkt. 10-5 at 40 ("I'm going to object as not relevant at this point in time. . . . it just seems as though we're going into all the facts of the Overstreet case, which quite frankly from the State's standpoint, has nothing to do with this case.").

Considering that background, Respondent's insistence that Mr. Hubbell was not diligent because he did not specifically ask for evidence relating to Ms. Holland and for "any statements that witnesses had made to the police," dkt. 63 at 8, is misplaced. "Trial counsel may rely, absent notice to the contrary, on representations by the prosecutor" that all *Brady* evidence has been disclosed. *In re Will*, 970 F.3d at 543; *Jefferson v. United States*, 730 F.3d 537, 541 (6th Cir. 2013) ("Reasonable diligence does not require a § 2255 petitioner repeatedly to scavenge for facts that the prosecution is unconstitutionally hiding from him."). Respondent's argument goes more to whether Mr. Hubbell's efforts to develop the record during PCR proceedings would have been successful than to whether his efforts were reasonable. *See Williams*, 529 U.S. at 435. But the

14

proper question under § 2254(e)(2) is whether Mr. Hubbell "was diligent in his efforts," *Williams*, 529 U.S. at 435, and the record shows that he made "a reasonable attempt, in light of the information available at the time."

Moreover, throughout the early stages of post-conviction proceedings, Mr. Hubbell was represented by at least three different attorneys, none of whom made any substantive filings with the court. First, the Indiana State Public Defender represented Mr. Hubbell for two years but did nothing before withdrawing and passing the case to outside counsel. Dkt. 9-7 at 1-2. While that attorney's appearance was on file for nearly ten years, the record reflects that his only action was to file a change of address. *Id.* at 2. Mr. Hubbell then hired private counsel who withdrew three days before Mr. Hubbell's scheduled evidentiary hearing. *Id.* at 3. The record does not show that any PCR counsel assisted Mr. Hubbell. On the contrary, the record reflects that Mr. Hubbell prepared his own written discovery requests, dkt. 10-9 at 121 ¶¶ 3–4; dkt. 10-9 at 255-57 ¶¶ 6-9, and represented himself at PCR evidentiary hearings, dkt. 9-7 at 5, 14, 16. Thereafter, while proceeding *pro se*, Mr. Hubbell filed numerous motions for discovery, including requests for records from Columbus Regional Hospital regarding Mr. Overstreet, *id.* at 3, 12-14, which were denied.

The respondent further argues that Mr. Hubbell failed to develop the record during state-court PCR proceedings because his discovery requests in those proceedings were narrower than the discovery he now seeks. Dkt. 63 at 8. But this does not take into account Mr. Hubbell's counsel's requests for discovery before trial. *Watkins v. Miller*, 92 F.Supp.2d 824, 842-43 (S.D. Ind.

15

2000) (Allowing expansion of the record on *Brady* claim not raised in state court because Watkin's trial lawyers specifically requested exculpatory discovery before trial). Nor does it consider that Mr. Hubbell represented himself during PCR proceedings, or that during post-conviction proceedings, the prosecutor reasserted and maintained that there was no relationship between the investigation of Mr. Overstreet and the investigation of Mr. Hubbell. Finally, it overlooks that Mr. Hubbell's PCR discovery request—which requested, for example, the "[n]ame, rank and or title" of the lead detective on the Overstreet case—may have led to additional requests if it hadn't been denied. *See* dkt. 51-2 at 7–8. Under these circumstances, Mr. Hubbell's efforts to develop the record during PCR proceedings regarding his *Brady* claim were reasonably diligent.

In sum, Mr. Hubbell's efforts to develop the record during PCR proceedings were reasonable given the information that was available to him. *Williams*, 529 U.S. at 431. He had no reason to know that the State was withholding witness statements relating to Mr. Overstreet's possible involvement with the murder of Sharon Myers. On the contrary, the State steadfastly denied any connection between Mr. Overstreet and the Sharon Myers' murder investigation. Under these circumstances, Mr. Hubbell was not at fault for failing to develop the factual bases for his claims in state court. *Strickler*, 527 U.S. at 280-82; *Williams*, 120 S. Ct. at 1492-93.

16

**B.  Mr. Hubbell has made a sufficient showing that the newly discovered evidence could be lawfully considered in this habeas proceeding**

To ensure that federal habeas proceedings are not prolonged with no purpose, a district court must "determine at the outset whether the new evidence could be lawfully considered." *Shoop*, 142 S. Ct. at 2044. That is, the district court must consider admissibility of the evidence sought before deciding whether a petitioner may conduct discovery. To prevail on his *Brady* claim, Mr. Hubbell has to show (1) that the newly discovered evidence was favorable to him because it is exculpatory or tends to impeach prosecution witnesses; (2) that the newly discovered evidence was suppressed by the prosecution; and (3) that he was prejudiced as a result of the States' failure to disclose the evidence, that is, "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Watkins*, 92 F.Supp.2d at 841 (citations omitted).

Here, the evidence that Mr. Hubbell seeks in discovery—and presumably will later seek to add to the existing state-court record—relates to whether the State failed to disclose material, exculpatory information. Mr. Hubbell's federal habeas counsel asserts that "the State's case against Mr. Hubbell was weak and circumstantial" with "[n]o DNA, fingerprints, hair, or blood evidence ever connect[ing] Mr. Hubbell to the crime or Sharon Myers to Mr. Hubbell's van." Dkt. 65 at 12. Moreover, considering the weakness of the State's case and similarities between the abduction and murder of Ms. Eckart and Ms. Myers, the

new evidence will cast substantial doubt on the jury's guilty verdict. Dkt. 65 at 14.

Evaluating the merits of Mr. Hubbell's *Brady* claim will require thorough and careful evaluation of any newly discovered evidence to determine what impact it may have had on the jury in the context of the evidence that was presented at trial. While the Court does not decide the merits of Mr. Hubbell's *Brady* claim at this time, it still must determine "whether the new evidence could be lawfully considered," *Shoop*, 142 S. Ct. at 2044, before facilitating further development of the record through discovery. Considered in the context of what Mr. Hubbell must show to prevail on his *Brady* claim, the new evidence that Mr. Hubbell seeks in his motions for discovery appears relevant to the Court's evaluation of prejudice and therefore may be "lawfully considered" by the Court in later phases of this case. *Shoop*, 142 S. Ct. at 2044; *Watkins*, 92 F.Supp.2d at 841.

Respondent argues that Mr. Hubbell will not be able to expand the record with the evidence he seeks in discovery because the arguments he has made in furtherance of his *Strickland* claim foreclose his *Brady* clam. Dkt. 63 at 5-7. Respondent points out that Mr. Hubbell argued in his amended petition that his post-conviction counsel could have discovered the facts underlying his ineffective assistance of trial counsel claims with due diligence. Dkt. 48 at 17. And Mr. Hubbell acknowledges that both his *Brady* and ineffective assistance of trial counsel claims rely on the same facts and evidence. Thus, according to Respondent, if Mr. Hubbell cannot introduce new evidence to support his

18

ineffective assistance of counsel claim, then he cannot introduce the same evidence to support his *Brady* claim.

Respondent's argument appears to assume that Mr. Hubbell was at fault for not developing the state-court record—a requirement for § 2254(e)(2)(A)(ii) to apply at all. But, as discussed above, Mr. Hubbell was not at fault because he made reasonably diligent efforts to obtain the evidence the State had pertaining to Mr. Overstreet. Mr. Hubbell's ineffective assistance of counsel claim is based on his counsel's alleged failure to conduct an adequate investigation into Mr. Overstreet as a potential suspect. While there is some tension between the ineffective assistance of counsel claim and Mr. Hubbell's contention that the State suppressed evidence pointing to Mr. Overstreet, Mr. Hubbell is entitled to plead alternate claims. Respondent concedes this. Dkt. 63 at 6 ("Warden agrees that petitioners often hedge their *Brady* and *Strickland* bets, arguing that either the State suppressed evidence or counsel should have discovered it.").

Respondent has pointed to no authority supporting his argument that Mr. Hubbell's permitted alternative argument that either trial counsel or post-conviction counsel could have discovered the suppressed *Brady* evidence negates caselaw that expressly permits counsel to rely on the prosecutor's continuing assurances that the State was not suppressing *Brady* evidence related to Mr. Overstreet. *In re Will*, 970 F.3d 536, 543 (5th Cir. 2020); *Jefferson v. United States*, 730 F.3d 537, 541 (6th Cir. 2013). And in this case, the prosecutor affirmatively stated throughout Mr. Hubbell's prosecution and post-

19

conviction proceedings that there was no evidence that Mr. Overstreet might be linked to Sharon Myers' murder.

For these reasons, Mr. Hubbell's motion for leave to conduct discovery, dkt. [49], and motion for leave to conduct deposition, dkt. [70] are **granted**. He shall complete discovery **by August 31, 2023**. Thereafter, the parties shall meet and confer to prepare and submit a joint status report **by September 15, 2023**, addressing the parties' positions on (i) what discovery, if any, can become part of the record and (ii) whether an evidentiary hearing is necessary.

**SO ORDERED.**

Date: 6/8/2023

_James Patrick Hanlon_
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Jesse R. Drum
INDIANA ATTORNEY GENERAL
jesse.drum@atg.in.gov

Jimmy Gurule
Jimmy Gurule
gurule.1@nd.edu

Kevin Murphy
Notre Dame Exoneration Justice Clinic
kmurph33@nd.edu

Elliot Slosar
LOEVY & LOEVY
elliot@loevy.com

Brent Westerfeld
Brent Westerfeld
blwesterfeld@gmail.com